# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| APRIL HAMILTON,  )  <br>     Plaintiff,  )  <br> )  <br> v.  )  <br> )  <br> CARSON-NEWMAN COLLEGE, et al.,  )  <br>     Defendants.  ) | No. 3:09-CV-479 <br> (Phillips) |

## MEMORANDUM AND ORDER

This is an action for compensatory damages, declaratory judgment, and injunctive relief against Carson-Newman College and various school employees who plaintiff alleges violated her rights guaranteed by the Americans with Disability Act and the Rehabilitation Act, and resulted in her termination from the Nursing Program at Carson-Newman. This matter is before the court on the defendants' motion to dismiss certain claims pursuant to FRCP 12(b)(6). For the reasons which follow, the defendants' motion will be granted. The court finds that the plaintiff's claims, to the extent they rely on events that occurred prior to November 5, 2008, shall be dismissed, and all claims against the individual defendants, in their individual and official capacities, shall be dismissed for failure to state a claim for which relief can be granted.

## Background

Plaintiff April Hamilton is a former student in Carson-Newman's Nursing Program. Hamilton suffers from Attention Deficit Hyperactivity Disorder (ADHD). She enrolled in the accelerated undergraduate Nursing Program at Carson-Newman in the Fall of 2005, and Carson-Newman agreed to provide her with extra time and a distraction free environment for testing. After one semester, Hamilton alleges that Carson-Newman revoked her accommodations. As a result of her accommodations being revoked, Hamilton states she failed her Medical Surgery class in the Spring 2006 term and was forced to drop out of the accelerated Nursing Program.

Hamilton continued in the non-accelerated program in the Fall of 2006 without any accommodations. Hamilton requested that defendant Rebecca Van Cleave, Coordinator for Students with Disability, return her accommodations, but the request was denied. In December 2006, Hamilton met with Dr. Michael Arrington, the Provost at Carson-Newman. Dr. Arrington decided that Hamilton should be given accommodations. On January 11, 2007, Carson-Newman again agreed to provide Hamilton accommodations for test taking and Hamilton successfully completed her Summer 2007 and Fall 2007 terms.

In February of the Spring 2008 term, Hamilton contracted two serious illnesses and was instructed by her physician to stay home. This caused her to miss her Community Health exam. Hamilton was provided with a time to make-up her Community Health exam; however, she informed her professor that she would not have sufficient time

to prepare for the exam if she had to take it during the same time frame as the rest of her final exams. During the week of final exams, Hamilton states she had four exams in two days, and was required to take the test on the make-up day. Hamilton states that she later discovered that requiring her to take so many exams in one week was contrary to school policy and that she could have taken the exam at a later date. Hamilton brought this matter before the Provost, who allowed her to reschedule the exam. Professor Barbara Hulsman and Hamilton signed an agreement that Professor Hulsman would meet with Hamilton to help her prepare for the exam. Also, the Community Health exam would be rescheduled for two months later during Hamilton's summer term final exams. Hamilton asserts she made numerous attempts to contact Professor Hulsman to prepare for the exam, but the professor was unavailable. Hamilton asserts this violated their agreement.

Hamilton alleges that because she was unable to meet with Professor Hulsman, and because she was not provided with accommodations, she failed her Community Health exam. She achieved a grade of 75, giving her a final grade of 77 in the class, just 1 point short of the required 78 to pass. Hamilton reviewed the exam with Professor Hulsman and discovered three "debatable" answers to questions. Hamilton alleges that in Community Health it is not uncommon for there to be arguable questions, and it is in the professor's discretion whether to count the answers. Professor Hulsman decided to discuss the debatable questions with Dean Patricia Kraft. Dean Kraft told Hamilton that she would talk to the other administrators about her grade in Community Health. Dean Kraft advised Hamilton to proceed with taking the Kaplan Nursing Boards

preparation course, and that she would be contacted about the decision of the administrators on her Community Health grade.

Hamilton paid for and attended the Kaplan prep course for nearly three months. After completing the course, she attempted to contact Dean Kraft to obtain a username and password to sign up for the nursing boards. Hamilton did not hear from Dean Kraft for two weeks. Dean Kraft then informed Hamilton that she thought Hamilton had "given up."

Hamilton paid for the Kaplan course through Carson-Newman and regularly provided Carson-Newman with updates on her progress in the course. Hamilton also scheduled and completed Clinicals for her Leadership and Management course and received a passing grade. Hamilton emailed Dean Kraft her grade in Clinicals and Dean Kraft responded with a letter dated January 30, 2009, stating that Hamilton had been terminated from the Nursing Program at Carson-Newman.

Hamilton met with Provost Kina Mallard in March 2009 to discuss the termination and other problems Hamilton had at Carson-Newman obtaining accommodations. Mallard upheld the termination.

The 2009-2010 Undergraduate Nursing Student Handbook refers students to grievance procedures outlined in the 2009-2010 Eagle Student Handbook. The Eagle

Student Handbook sets out two basic tracts for discrimination complaints. One for disability discrimination and another for all other discrimination complaints. The Handbook further segregates complaints of disability discrimination based on the denial of a reasonable accommodation. The Handbooks directs "concerns or dissatisfaction" regarding accommodations to the Coordinator for Students with Disabilities (CDS), Rebecca Van Cleave. The Handbook further states that the decision of the CDS may be appealed to the Students with Disability Committee (SWDC). The decision of the SWDC may be appealed to the Provost.

Carson-Newman's grade appeal policy provides that a student may request a review of the course work upon which the grade was assigned. The first step is a meeting with the instructor of the course. If that does not resolve the issue, then the appeal goes to the department chair, and then to the school dean. If the grade appeal has not been resolved at these levels, it moves to the Provost for final review. The Provost may refer a grade appeal to the Academic Standards Committee for its study and recommendation. Hamilton alleges she was not afforded the opportunity to have her complaint heard by the SWDC, as outlined in the Handbook. Instead, her complaint was heard only by the Provost.

Hamilton filed the instant complaint on November 5, 2009.

**Defendants' Motion to Dismiss**

The defendants have moved to dismiss (1) all claims related to allegations that are time-bared, and (2) all claims against the individual defendants in both their individual and official capacities pursuant to FRCP 12(b)(6), for failure to state a claim for which relief can be granted.

A motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, requires the court to construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of her claims that would entitle her to relief. *Meador v. Cabinet for Human Resources,* 902 F.2d 474, 475 (6th Cir.) *cert. denied,* 498 U.S. 867 (1990). The court may not grant such a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall,* 898 F.2d 1196, 1198 (6th Cir. 1990); *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995) (noting that courts should not weigh evidence or evaluate the credibility of witnesses). The court must liberally construe the complaint in favor of the party opposing the motion. *Id.* However, the complaint must articulate more than a bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434 (6th Cir. 1988). "[The] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (citations omitted).

**Statute of Limitations**

The statutes of limitations for claims under the ADA and the Rehabilitation Act are determined by the "most analogous" state law statute of limitations. *See Southerland v. Hardaway Management Co.,* 41 F.3d 250 (6th Cir. 1995); *see also Lewis v. Fayette County Detention Center,* 2000 WL 556132 (6th Cir. Apr. 28, 2000); *Knapp v. City of Columbus,* 2002 WL 1578828 (S.D.Ohio Apr. 26, 2002). In Tennessee, the most analogous state statute of limitations is the one-year statute of limitations for personal injury actions. *See Williams v. Trevecca Nazarene College,* 1998 WL 553029, *1 n.2 (6th Cir. Aug. 17, 1998); *Collier v. Austin Peay State University*, 616 F.Supp.2d 760 (M.D.Tenn. 2009); *Barron v. HCA, Inc.,* 2006 WL 2850634 (M.D.Tenn. Sept. 29, 2006). Hamilton filed her complaint on November 5, 2009. Based on the filing date and applying the one-year statute of limitations, defendants argue that plaintiff's ADA and Rehabilitation Act claims relying on events that predate November 5, 2008 are time-barred.

Hamilton does not contest that the one-year statute of limitations applies to the ADA and Rehabilitation Act; however, she argues that the violations of the ADA and the Rehabilitation Act in her complaint were continuing violations culminating in her dismissal. Therefore, she asserts that the one-year statute of limitations did not begin until January 2009, when she was dismissed from the nursing program.

The Sixth Circuit has recognized two distinct categories of continuing violations (1) those alleging serial violations and those identified with a longstanding and

demonstrable policy of discrimination. Sixth Circuit law summarizes the two categories as follows:

> The first category arises where there is some evidence of present discriminatory activity giving rise to a claim of continuing violation such as where an employer continues to presently impose disparate work assignments or gives unequal pay for equal work . . . . The second category of continuing violation arises where there has occurred a long-standing and demonstrable policy of discrimination. This requires a showing by a preponderance of the evidence that some form of intentional discrimination against the class of which plaintiff was a member was the company's standing operating procedure.

*Burzynski v. Cohen*, 264 F.3d 611, 618 (6th Cir. 2001). In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), an employment case, the Supreme Court held that when an employee seeks redress for discrete acts of discrimination or retaliation, the continuing violation doctrine may not be invoked to allow recovery for acts that occurred outside the filing period. *Id.* at 113. According to the Court, "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." *Id.* In contrast, hostile environment claims involve unlawful employment practices that cannot be said to occur on any particular day, but occur over a series of days or years. *Id. Morgan* further explained:

> Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180 or 300 days time period after the discrete discriminatory act occurred. The existence of past acts and the employee's knowledge of their occurrence, however, does not bar employees from filing charges about

8

> related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed.

*Id.*

Here, taking the facts in a light most favorable to plaintiff, she is alleging a series of discrete acts. The alleged violations by Carson-Newman were easily identifiable to plaintiff. This is evidenced by her repeated attempts to regain her accommodations. In the Spring 2006 term, Hamilton's accommodations were revoked, allegedly causing her to fail the Medical Surgery class and forcing her to drop out of the accelerated Nursing Program. Hamilton was aware of a violation of her rights because she repeatedly attempted to regain her testing accommodations during the Fall 2006 term and appealed to the Provost at Carson-Newman.

Hamilton makes no claims regarding the Summer 2007 and Fall 2007 terms, and it is not until the Spring 2008 term that another violation is alleged. These alleged violations include a failure to modify school policy, a failure by Carson-Newman to follow the grievance procedure, a breach of an agreement between Hamilton and Professor Hulsman, and Professor Hulsman's refusal to give Hamilton credit for the three debatable answers on her Community Health exam. Plaintiff was put on notice at the time of each violation as evidenced by the grievances she filed and the actions she took to resolve the issues with Carson-Newman. Because the court finds that these discrete acts predate November 5, 2008, they are time-barred. All federal claims arising from events occurring

prior to November 5, 2008, are time-barred, and defendants' motion to dismiss is **GRANTED** as to those claims. All federal claims arising from events occurring on or after November 5, 2008, are timely.

### **Individual Defendants**

Next, defendants argue Hamilton cannot sustain her claims against the individual defendants because the Rehabilitation Act and the ADA do not support individual liability. In addition to Carson-Newman, plaintiff has named as defendants in this action a number of faculty and staff members of the college in their individual capacity.

In the Sixth Circuit, it is well-established that there is no individual liability under the ADA or the Rehabilitation Act. *See Powell v. Morris,* 184 F.R.D. 591, 596 (S.D.Ohio 1998) ("There is no individual liability under the ADA"); *See also Hosseinipour v. State Medical Bd. of* Ohio, 2009 WL 1047357 (S.D.Ohio Apr. 16, 2009); Mitchell *v. Chapman*, 343 F.3d 811, 825 n.15 (6th Cir. 2003) ("There is no individual liability under the Rehabilitation Act"); *Davis v. Flexman*, 109 F.Supp.2d 776, 792 (S.D.Ohio 1999) ("nothing in the statute or the implementing regulations indicates the existence of individual liability under the Rehabilitation Act"); *Reguli v. Guffee*, 2009 WL 425020 (M.D.Tenn. Feb. 19, 2009); *McVicker v. Hartfield*, 2009 WL 2431257 (S.D.Ohio 2009); *Hiller v. Brown*, 177 F.3d 542 (6th Cir. 1999) (holding that the Rehabilitation Act does not impose individual liability); *Sagan v. Sumner County Bd. of Ed.,* 2010 WL 2696169 (M.D.Tenn. Jul. 6, 2010) (holding no individual liability under the Rehabilitation Act or the ADA). Thus, the individual

defendants' motion to dismiss with prejudice the ADA and Rehabilitation Act claims against them in their individual capacities is **GRANTED.**

The individual defendants next argue that the official capacity claims against them must be dismissed on the basis that a claim against an individual in her official capacity is tantamount to a claim against the employer and where, as here, the employer is also sued, the official capacity suit against the employee is simply redundant and may be dismissed. *Johnson v. Wash. County Career Ctr.,* 2010 WL 2570929 (S.D.Ohio June 22, 2010) (dismissing official capacity Rehabilitation Act and ADA claims against an individual where the state entity employer was also named as a defendant) (citing *Hafer v. Melo,* 502 U.S. 21, 25 (1991) ("The real party in interest in an official capacity suit is the government entity itself and not the named official"); *Von Herbert v. City of St. Clair Shores*, 2003 WL 1194304 (6th Cir. Mar. 11, 2003) (dismissing official capacity claims as redundant and subsumed by claim against the government entity). Accordingly, the defendants' motion to dismiss the official capacity claims against J. Randall O'Brien, Rebecca Van Cleave, Patricia A. Kraft, Laura Wadlington, Kina Mallard, Barbara Hulsman, and Angela Woods is **GRANTED.**

**Breach of Contract Claim**

In her response, Hamilton concedes that her contract was with Carson-Newman, and therefore, the individual defendants are not subject to this claim.

Accordingly, defendants' motion to dismiss the breach of contract claim against the individual defendants is **GRANTED.**

## **Conclusion**

For the foregoing reasons, the defendants' motion to dismiss all federal claims arising from events occurring prior to November 5, 2008 [Doc. 11] is **GRANTED**. All federal claims arising from events occurring on or after November 5, 2008, are timely and plaintiff may proceed on those claims. Defendant's motion to dismiss all claims against the individual defendants [Doc. 11] is also **GRANTED**. J. Randall O'Brien, Rebecca Van Cleave, Patricia A. Kraft, Laura Wadlington, Kina Mallard, Barbara Hulsman, and Angela Woods are hereby **DISMISSED** as defendants in this case.

**IT IS SO ORDERED.**

                                          **ENTER:**
                                              s/ Thomas W. Phillips
                                            United States District Judge